LAWRENCE AMICH,

    Plaintiff,

  v.               Case No. 10-CV-105

SEDGWICK CLAIMS MANAGEMENT SERVICES, INC.,
and WALGREEN INCOME PROTECTION PLAN
FOR PHARMACISTS AND REGISTERED NURSES,

    Defendants.

## ORDER

  On April 2, 2010, plaintiff Lawrence Amich ("Amich") filed a Motion for Summary Judgment (Docket #17) in this case brought under the Employee Retirement Income Security Act ("ERISA"). On June 4, 2010, defendants Sedgwick Claims Management Services, Inc. ("Sedgwick") and Walgreen Income Protection Plan for Pharmacists and Registered Nurses ("the Plan," collectively "defendants") filed a joint Motion for Summary Judgment (Docket #33). This order addresses both parties' motions.

### SUMMARY JUDGMENT STANDARD

  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). This same standard applies

to cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In other words, in determining whether a genuine issue of material fact exists, the court must construe all inferences in favor of the non-movant. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir. 1983).

## BACKGROUND

The material facts are undisputed.[1] Walgreen Company ("Walgreens") sponsors a long-term disability benefit plan for pharmacists and nurses. (Pl.'s Resp. to Defs.' Proposed Findings of Fact ¶ 1 [hereinafter DPFOF]) (Docket #31). The long-term disability plan is the defendant Plan in this action. (*See id.*). Pursuant to the Plan, there is both a plan administrator and a claim administrator, with responsibility as set forth in the following plan language:

---

[1]In some cases, the parties have "disputed" facts, but only to the extent that the objection is argumentative or a legal conclusion. *See Reget v. City of La Crosse*, 2006 WL 240289 at *1 (W.D. Wis. 2006) (disregarding proposed findings of fact and responses that are legal conclusions, argumentative, irrelevant, not supported by cited evidence, or not supported by specific citation). Where such is the case, and there is no relevant dispute, the court cites to the proposed findings in spite of the response.

The Claim Administrator and the Plan Administrator will apply their judgment to claims and appeals in a manner that they deem to be consistent with the Plan and any rules, regulations or prior interpretations of the Plan... The authority granted to the Claim Administrator and the Plan Administrator to construe and interpret the Plan and make benefit determinations, shall be exercised by them (or persons acting under their supervision) as they deem appropriate in their sole discretion.

(*Id.* ¶ 3). According to the terms of the Plan, the plan administrator is the Director of Risk Management and Benefits Accounting for Walgreens, and defendant Sedgwick is the claim administrator. (*Id.* ¶¶ 2-3). The Plan defines long-term disability as "due to sickness, pregnancy, or accidental injury, [the claimant is] prevented from performing one or more of the essential duties of [the claimant's] own occupation and [is] receiving appropriate care and treatment from a doctor on a continuing basis." (*Id.* ¶ 11). In addition, to meet the definition, a claimant must either: be unable to earn more than 80% of pre-disability earnings at their own occupation from any local employer for the first 18 months; or, following that 18-month period, be unable to earn more than 60% of pre-disability earnings from any local employer in any gainful occupation for which the claimant is reasonably qualified. (*Id.*). The Plan may discontinue benefits where the participant is "medically released to return to work or no longer meet[s the] Plan's definition of disability." (*Id.* ¶ 12).

A claimant must submit an appeal to Sedgwick in order to dispute a claim denial, after which Sedgwick must, per the Plan, notify the claimant of its decision within 45 days of receipt. (*Id.* ¶¶ 4-5). The Plan also permits Sedgwick to extend the

time for decision by an additional 45 days if necessary. (*Id.* ¶ 6). By the terms of the Plan, where a claim administrator requires additional information from the claimant, it will inform the claimant and toll the appeal deadlines pending receipt of the additional information. (*Id.* ¶ 7). After a second-level appeal, the Plan contains no provision for further appeal or re-opening of the administrative record. (*Id.* ¶ 10). The Plan also provides for reasonable and free access to "copies of all documents, records, and other information relevant to your claim." (Defs.' Joint Resp. to Pl.'s Proposed Findings of Fact [hereinafter PPFOF] ¶ 13) (Docket #29).

Amich is a pharmacist formerly employed by Walgreens and, as such, was eligible to participate in the Plan assuming he met its requirements. (DPFOF ¶ 13). On June 6, 2008, Sedgwick approved Amich's claim for long-term disability benefits, effective May 31, 2008. (*Id.* ¶ 14). On January 9, 2009, Sedgwick notified Amich that he was no longer qualified for benefits. (*Id.* ¶ 15). Upon notice of benefit termination, Amich requested from Sedgwick copies of "all documents, records, and other information relevant to this claim for benefits." (*Id.* ¶ 25). On January 21, 2009, Sedgwick mailed a collection of documents to Amich relevant to his claim. (*Id.* ¶ 26). Amich appealed the decision on January 30, 2009. (PPFOF ¶ 30). On April 29, 2009, Sedgwick notified Amich that it was upholding the denial of benefits. (DPFOF ¶ 36).

On May 20, 2009, Amich initiated a second appeal of the denial. (PPFOF ¶ 33). In the appeal letter, Amich also made a request for a copy of the

Administrative Record. (*Id.*). The letter stated Amich's position that "[t]he Administrative Record includes all SOAP notes, emails, faxes, notes, and any documents whatsoever related to Mr. Amich." (Long-Term Disability Administrative R. [hereinafter LTD Admin. R.] 0279).[2] The letter closed as follows:

> After I have received the materials requested, we will submit to you any additional materials and documents we would like considered, as well as our written comments supporting Mr. Amich's claim.

> While this letter shall constitute notice of the appeal of denial, it is requested that Sedgwick [] not take any action to consider the appeal until such time as we have had an opportunity to both review the current Administrative Record, and to supplement the record with additional documentary evidence to support Mr. Amich's claim.

(LTD Admin. R. 0280). Sedgwick assigned the second-level appeal to Appeal Specialist Angela Cannon ("Cannon") who contacted Amich's counsel on June 15, 2009. (DPFOF ¶¶ 39-40). During the conversation, Amich's counsel stated that he was unsure whether they would submit additional medical records and would know upon receiving the Administrative Record and Plan documents. (*Id.* ¶ 41). On June 18, 2009, Cannon informed Amich's counsel that he would need to contact the Plan Administrator for copies of the summary plan documents and also provided the address for doing so. (*Id.* ¶ 42).

---

[2]The Administrative Record regarding Amich's long-term disability appeal has been filed as Exhibit A to the Affidavit of Cynthia Craig (Docket #28). In some cases, such as the request made in Amich's second-level appeal letter, the parties "dispute" the characterization of certain documents contained in the record. However, these disputes are again either argument, legal conclusion, or irrelevant. Ultimately, no party disputes the factual content of the Administrative Record, and thus in situations such as this, the court cites directly to the record.

On July 1, 2009, Cannon phoned Amich's counsel, but did not reach him directly, advising by message that Sedgwick had not received any additional information, and confirmed that she knew counsel was awaiting a copy of the Administrative Record. (*Id.* ¶ 43); (LTD Admin. R. 0018). Cannon also relayed the message that if counsel needed additional time to submit documents, he would need to inform her by July 6, 2009. (DPFOF ¶ 43). Cannon phoned again on July 6, 2009, about submitting additional medical documents, after which Cannon entered a tolling extension of 30 days. (*Id.* ¶¶ 44-45).[3] Sedgwick memorialized this 30-day tolling in a letter to Amich dated July 7, 2009. (LTD Admin. R. 0285). The letter further stated that if Amich did not contact or submit additional information to Sedgwick, it would continue review of the appeal based on the information in the file. (*Id.*). On July 13, 2009, Amich sent Sedgwick a letter disputing the request for additional time and again requesting the Administrative Record. (PPFOF ¶ 36); (LTD Admin. R. 0286). The letter further stated that "Sedgwick's violation of ERISA further delays my review of the case and prevents me from responding to the decision denying benefits." (LTD Admin. R. 0286). Subsequent to making additional requests for the record by phone, Amich sent Sedgwick a further written request for the Administrative Record on July 24, 2009. (PPFOF ¶ 37). Sedgwick then sent Amich a copy of the Administrative Record by overnight mail on July 29, 2009.

---

[3]The parties often dispute whether Amich's counsel explicitly requested tolling periods, but as the court's later discussion shows, that fact is not material to the decision.

(DPFOF ¶ 49). The next day, Walgreens forwarded copies of the summary plan description and policy on disability to Amich. (*Id.* ¶ 50).

On July 30, 2009, Cannon phoned Amich's counsel to inquire whether he had received the documents, but did not reach counsel, instead speaking with an answering service. (*Id.* ¶ 51); (LTD Admin. R. 0016). On August 5, 2009, Cannon again called Amich's counsel to inform him that additional material would be required by the end of the day in order for Sedgwick to make a determination by August 10, 2009. (DPFOF ¶ 53). As a result of the conversation, Cannon again entered a tolling extension, this time for 21 days. (*Id.* ¶ 55). Cannon followed up by sending a letter dated August 6, 2009, stating the entry of a tolling extension, which noted that Sedgwick would continue with review if Amich did not contact or provide it with additional information by August 26, 2009. (LTD Admin. R. 0299).

On August 12, 2009, Amich notified Sedgwick by letter that the Administrative Record it had produced was missing medical records. (PPFOF ¶ 39). That letter also requested copies of the noted missing documents. (LTD Admin. R. 0303).[4] On August 26, 2009, Amich made a second written request to Sedgwick for the missing medical records. (PPFOF ¶ 40). In that request, counsel wrote that he could not "properly support Mr. Amich's appeal until I have the complete Administrative Record. Accordingly, please produce the missing documents immediately and allow

---

[4]In some cases, Amich cites to a different copy of the administrative record, attached to the Affidavit of Alan Olson, counsel for plaintiff. Though it contains the same documents, its numbering system varies from the copy attached as an exhibit by defendants. In this case, the court cites only to the document as submitted in the defendant's exhibit for ease of reference.

45 days thereafter for our submission of the appeal." (LTD Admin. R. 0305). In response, Cannon entered a 45-day tolling extension and notified Amich by letter dated September 4, 2009. (Aff. of Angela Cannon ¶ 13) (Docket #27); (LTD Admin. R. 0014, 0307).[5] That letter further stated that if Sedgwick did not receive additional information or other contact by October 10, 2009, it would proceed with appellate review. (LTD Admin. R. 0307). On September 10, 2009, Amich replied by letter, again disputing any request for an extension of time and renewing the request for the missing records. (PPFOF ¶ 42). Later that month, on September 30, 2009, Cannon was replaced as the examiner by a different appeal specialist. (LTD Admin. R. 0014). Following a phone call, Sedgwick then overnighted some documents to Amich on October 9, 2009. (LTD Admin. R. 0012). Those documents, however, still did not contain all the missing information. (LTD Admin. R. 0323).

On October 14, 2009, Sedgwick informed Amich by letter that it normally provided "a decision within 45 days after receipt of the written request for review," but that, "[a]s permitted under ERISA, . . . a 45 day extension is needed to complete the review." (LTD Admin. R. 0327). That letter further informed Amich that there

---

[5]It is troubling to note that, either by design or by lack of attention to detail, defendants' proposed findings of fact state that "Cannon called Amich's counsel about his request and, because he indicated that Amich could not proceed until he received those records, she granted a tolling extension for an additional 45 days." (DPFOF ¶ 62). That is nowhere evident in the record. Ms. Cannon's affidavit states only that she gave an extension on the basis of the letter from counsel (Aff. of Angela Cannon ¶ 13). Further, the claim notes state only that she received the letter on August 28, 2009, with the next entry showing no phone call, but simply the mailing of a tolling letter. (LTD Admin. R. 0014); (See also Aff. of Angela Cannon ¶ 5). The court has no reason to believe that defendants intended to mislead the court, but it would suggest much more careful drafting in the future.

would be a written response no later than November 29, 2009.  Counsel responded

by letter on November 2, 2009, stating that he was in receipt of the Administrative

Record, but that two particular documents from the original request remained

missing.  (LTD Admin. R. 0323).[6]  The two missing documents were the "Progress

Notes of Dr. Donald Middleton" from February 6, 2008 to February 11, 2009, and the

"Progress Note of Dr. Anthony Ferguson" from April 29, 2008.  (LTD Admin. R.

0323).   Both of these documents were listed as "provided for review" by the

independent reviewing physicians at the first-level appeal.  (LTD Admin. R. 0255);

(LTD Admin. R. 0270).  Further, the two independent physician reports specifically

state, respectively, that the "evaluation has been conducted on the basis of the

medical documentation as provided," and "[t]he submitted medical information does

not document an inability to perform job duties."  (LTD Admin. R. 0260); (LTD Admin.

R. 0272).  Further, the first-level appeal-denial letter from Sedgwick notes that the

review included medical records from Doctors Middleton and Ferguson.  (LTD

Admin. R. 0273).

On November 25, 2009, Sedgwick internally made its decision to deny the

second-level appeal, left a message with counsel's answering service, and mailed

the determination letter that day.  (LTD Admin. R. 0003-0004, 0478).  On November

---

[6]Defendants dispute that the records requested on November 2, 2009, are the same as
those originally requested as "missing."  However, that dispute is merely argumentative, and it is
clear from the comparison of the requests that the only difference is in the use of the term
"Progress Notes" instead of "Office Notes" in the case of Dr. Donald Middleton, and "Progress
Note" instead of "Office Notes" in the case of Dr. Anthony Ferguson.  (LTD Admin. R. 0303, 0308,
0323).   The referenced doctors and dates remain the same, thus the court finds no merit to
defendants' argument that the request was not for the same documents.

27, 2009, counsel submitted a further request for the missing documents and also submitted additional medical information for consideration. (LTD Admin. R. 0339-0344). On December 29, 2009, Sedgwick located the missing documents, found in Amich's short-term disability claim file, and sent them to Amich on December 31, 2009. (LTD Admin. R. 0001). Along with the documents, Sedgwick stated in its letter that the November 25, 2009 decision was final. (LTD Admin. R. 0484).

## ANALYSIS

Amich's complaint alleges two separate violations of ERISA: improper termination of benefits, actionable under 29 U.S.C. § 1132(a)(1)(B); and improper withholding of documents, punishable pursuant to 29 U.S.C. § 1132(c)(1)(B). Amich is entitled to judgment on the first claim, and defendants are entitled to judgment on the second. Section 1133 of ERISA requires a full and fair review, and the regulations that guide that review require providing reasonable access to all documents relevant to the claim. 29 U.S.C. § 1133(2); 29 C.F.R. § 2560.503-1(i)(5). Sedgwick granted additional time to allow Amich to receive the requested documents, review them, and then submit any additional information, yet ultimately failed to provide the documents before making the final decision on appeal. In light of the totality of the circumstances, defendants denied Amich a full and fair review of the decision to terminate benefits. That failure led to an arbitrary and capricious termination of benefits. Because the court finds defendants' termination of Amich's

benefits arbitrary and capricious, it will grant judgment for Amich on his first claim and remand the decision to Sedgwick for a redetermination.

As to Amich's second claim, the penalties provided for in § 1132(c), under Seventh Circuit case law, apply only to withholdings which violate statute, not regulation. While Sedgwick did indeed withhold documents it was required to disclose, it was only required to do so by regulation and thus cannot be penalized under the statutory provision in question. Further, the Plan is not an administrator and thus not subject to penalty under § 1132(c). Therefore, defendants are entitled to judgment on Amich's second claim. The following discussion elaborates on both claims.

## I. STANDARD OF REVIEW

Before progressing to the merits of the motions, the court must settle the dispute as to the proper standard of review. Though the parties do not seem to differentiate between the standards of review as applied to each claim, the court must determine the proper standards individually. Amich argues that the court must review the defendants' actions *de novo*, while the defendants argue that the more deferential arbitrary and capricious standard applies. For the reasons discussed below, the court will review the termination under the arbitrary and capricious standard, but the court need not grant any deference to defendants in determining whether to assess a penalty for withheld documents.

**A.    Standard as to Denial of Benefits**

Under Supreme Court precedent, a denial of benefits under ERISA is reviewed *de novo* unless the plan document gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where there is discretionary authority, a district court may disturb the administrator's decision only when it is arbitrary and capricious. *Houston v. Provident Life and Accident Ins. Co.*, 390 F.3d 990, 995 (7th Cir. 2004). However, Amich argues that this is a case in which, where an administrator fails to comply with ERISA deadlines, the court must conduct the subsequent review *de novo*, despite discretionary authority under the plan. He points to a Tenth Circuit case, suggesting that its rule may be applied in a similar manner here. In that case, the court of appeals held that where a plan administrator delayed a decision well past ERISA deadlines such that it was "automatically deemed denied" on review, a *de novo* standard applies in reviewing the denial, despite the plan vesting the administrator with discretionary authority in deciding claims. *Gilbertson v. Allied Signal, Inc.*, 328 F.3d 625, 631 (10th Cir. 2003). The *Gilbertson* court reasoned that the Supreme Court's holding in *Firestone* required the result because *Firestone* called for the more deferential standard of review only where an administrator actually exercised the vested discretion. *Id.* The Tenth Circuit further pointed out that the requirement that an administrator exercise discretion first before receiving deference comported with the underlying rationale

of *Firestone*, which found its basis in trust law's preference for the expertise of the trustee. *Id.* at 632. The court explained that a "deemed denied" decision is a function of failure to render a decision within statutory time limits and is thus a decision by operation of law rather than an exercise of discretion. *Id.* at 631.

Despite the well-reasoned rule contained in *Gilbertson*, Amich's case is distinguishable.[7] Amich does not dispute that the plan document vests Sedgwick with discretionary authority regarding benefits, claims, and appeals determinations. (DPFOF ¶ 3). However, unlike *Gilbertson*, the denial of Amich's claim is not the result of a complete failure to make a determination. Here, the decision was never "deemed denied" by operation of statute. Though Amich complains of improper procedure on Sedgwick's part, a decision was in fact ultimately issued. This is not a situation that falls under the rationale of *Firestone*, which eschews deferential review where there is essentially no actual decision to defer to. Thus, the court will proceed to review under the arbitrary and capricious standard.

### B. Standard as to Failure to Provide Documents

Though it is not readily apparent whether defendants also argue for deference to the administrator in deciding the § 1132(c)(1)(B) claim, that standard does not apply. Under the withholding provision, an administrator who fails to provide documents as required "may in the court's discretion be personally liable." 29 U.S.C.

---

[7]The court also notes that, though Amich cites to a Northern District of Illinois case for the same proposition, that case was in fact resolved under the arbitrary and capricious standard. *Harper v. Reliance Standard Life Ins. Co.*, 2008 WL 2003175, at *8-10 (N.D. Ill. May 8, 2008).

§ 1132(c)(1). By the statutory language, the decision is an application of the court's discretion; there is no "review" *per se*. And in any event, the rationale of *Firestone* would not apply, both by explicit statement of the Court and the inapplicability of trust principles where the statute mandates disclosure, thus removing any and all administrator discretion. 489 U.S. at 108 ("The discussion which follows is limited to the appropriate standard of review in § 1132(a)(1)(B) actions . . . ."); *see id.* at 111 ("Trust principles make a deferential standard of review appropriate when a trustee exercises discretionary powers."). Therefore, the court analyzes the § 1132(c)(1)(B) claim without any regard to administrator discretion.

## II.    DENIAL OF BENEFITS

Sedgwick's conduct in denying Amich's second-level appeal was arbitrary and capricious, thereby making the termination of his benefits improper. Under ERISA, a participant in a plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms . . . or to clarify his rights to future benefits." 29 U.S.C. § 1132(a)(1)(B). As the Seventh Circuit has explained,

> The arbitrary and capricious standard is the least demanding form of judicial review of administrative action, and any questions of judgment are left to the administrator of the plan. Absent special circumstances such as fraud or bad faith, the plan administrator's decision may not be deemed arbitrary and capricious so long as it is possible to offer a reasoned explanation, based on the evidence, for that decision.

*Semien v. Life Ins. Co. of N. Amer.*, 436 F.3d 805, 812 (7th Cir. 2006). Even so, the standard "is not a rubber stamp and deference need not be abject." *Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774 (7th Cir. 2003).

-14-

Instead, when a judge reviews the lawfulness of a discretionary benefit denial, all relevant factors should be weighed. *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117-19 (2008). Among permissible factors to consider is "the process afforded the parties." *Chalmers v. Quaker Oats Co.*, 61 F.3d 1340, 1344 (7th Cir. 1995).

Thus, though the court proceeds to review the denial of benefits under the more deferential standard, it heeds the Supreme Court's position that an administrator may not only abuse its entrusted discretion substantively, but also procedurally. *See Metropolitan Life*, 554 U.S. at 115 (noting that under trust principles, applicable to ERISA, a court determines "whether the trustee, substantively or procedurally, has abused his discretion"); *see also Wolfe v. J.C. Penney Co.*, 710 F.2d 388, 393 (7th Cir. 1983) (holding that a procedural defect may require the determination be set aside), *abrogated on other grounds, recognized by Casey v. Uddeholm Corp.*, 32 F.3d 1094 (7th Cir. 1994); *Hackett*, 315 F.3d at 775 (finding it "clear that the termination procedures were arbitrary and capricious").

A.    **Full and Fair Review**

Procedurally, all plans are required to "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review . . . of the decision denying the claim." 29 U.S.C. § 1133(2). Defendants argue that any violation of § 1133 is foreclosed because Amich failed to explicitly include it in the complaint or argue it until his reply brief, thereby waiving the ground. For this proposition, they cite to *Lewis v. School Dist. #70*, which found that failure to raise

an issue in the complaint forfeited it. 523 F.3d 730, 741 n.6 (7th Cir. 2008). That case concerned the Family and Medical Leave Act ("FMLA") which makes unlawful the interference with, restraint, or denial of the exercise of any right under the Act. *Id.* at 741. At that time, prior to new promulgation, regulations under the Act required specific notice procedures. 60 Fed. Reg. 2,180-01, 2,256-57 (Jan. 6, 1995) (29 C.F.R. § 825.301). The court found the plaintiff forfeited the claim that the defendant interfered with the exercise of her rights by failing to adequately notify her of what those rights were. 523 F.3d at 741 n.6. In support, the circuit court cited to another opinion, which defendants here also cite, holding that failure to give notice in the complaint of the contention that the defendant did not properly inform the plaintiff of FMLA rights was *within the discretion of the district court* to consider forfeited. *Stevenson v. Hyre Elec. Co.*, 505 F.3d 720, 730 (7th Cir. 2007).[8] Thus, on the basis of the case law cited, the court sees no reason why it lacks discretion to consider whether defendants violated their duty to provide a "full and fair" review in terminating Amich's benefits.[9]

This position is borne out by precedent demonstrating that the court may consider the dictate of § 1133 in its arbitrary and capricious analysis. The Seventh Circuit has never required that a plaintiff explicitly appeal to § 1133 in the complaint

---

[8]Defendants also cite a Western District of Wisconsin case for their assertion as well. However, that case merely decided that the plaintiffs had waived an argument through total silence. *Fujitsu Ltd. v. Netgear, Inc.*, 2009 WL 3047616, at *16 (W.D. Wis. Sept. 18, 2009), *aff'd in part & rev'd in part*, 620 F.3d 1321 (Fed. Cir. 2010).

[9]Further, defendants raise the issue of full and fair review themselves in defense of their adherence to ERISA deadlines. (Defs.' Br. in Supp. 21-22) (Docket #34).

in order to preserve the procedural right to a full and fair review. In one case, brought pursuant only to § 1132(a)(1)(B), the circuit court had no problem looking to the requirements of § 1133 for guidance in evaluating the propriety of the denial. *Semien v. Life Ins. Co. of N. Am.*, 436 F.3d 805, 809, 812 (7th Cir. 2006); *see also* Complaint & Amended Complaint, *Semien v. Life Ins. Co. of N. Am.*, 2004 WL 2304536 (N.D. Ill. Oct. 8, 2004) (No. 03-CV-4795, Docket #1, 14). In affirming the district court's ruling that benefit termination had not been arbitrary and capricious, the court cited directly to the "full and fair review" required by 29 U.S.C. § 1133(2), and relied on further explanatory citation to the regulations governing what information any review must take into account. 436 F.3d at 812. In another case, the court took up a common refrain that,

> The persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision.

*Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992); *see also Hackett*, 315 F.3d at 775 ("In reviewing the termination of benefits, we have noted that ERISA requires . . . that the claimant be afforded an opportunity for full and fair review." (internal quotation omitted)). These cases make it apparent that a claimant need not explicitly invoke § 1133 in the complaint in order to receive ERISA's protection of a "full and fair review." Therefore, though Amich may not have invoked § 1133

immediately, the court will still consider its mandate in reviewing the propriety of the decision to deny benefits.

### 1.    Sufficiency of Notice

However, the court finds Amich's specific argument without merit.  Amich, somewhat confusingly, argues that he was denied a full and fair review because Sedgwick failed to give him additional information necessary to perfect his claim.  What confuses the issue is that he seems to combine an argument that he was denied access to documents, with appeal to the regulations governing the content of notice.  The notice regulations require that notice of adverse benefit determinations include "description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."  29 C.F.R. § 2560.503-1(g)(1)(iii).  However, Amich never actually cites this regulation, rather citing to *Wolfe v. J.C. Penney Co.*,  which cites the substantially similar requirement from a prior version of the regulation, then located at 29 C.F.R. § 2560.503-1(f)(3).  710 F.2d at 392.  He later specifically cites subsection (f)(3), perhaps not realizing that the content of that subsection has since changed.  In any event, it appears Amich's true argument draws upon subsection (g)(1)(iii).

There are two flaws in Amich's argument, one of possible importance, and the other of controlling importance.  First, the notice-content regulation Amich points to applies, seemingly, only to notifications following initial benefit determinations.

Though subsection (g) itself is not explicitly clear, there is a separate subsection, (j), that governs the content of notifications for benefit determinations on review. 29 C.F.R. § 2560.503-1(g), (j). However, even if subsection (g) does apply, Amich's argument misconstrues the provision. Subsection (g) requires that notice of the determination must inform the claimant of what additional material or information was absent that would otherwise perfect the claim. 29 C.F.R. § 2560.503-1(g)(1)(iii). As the *Wolfe* court explained, the provision "enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record." 710 F.2d at 392. But Amich argues that the withheld medical records are "necessary information" that Sedgwick failed to produce. This argument says nothing about the content of Sedgwick's actual notice, and subsection (g), in turn, says nothing about requiring production of "necessary information." Thus, Amich's argument is off-point and the court rejects it.

### 2.    Failure to produce relevant documents

On the other hand, in reviewing the totality of defendants' conduct in terminating Amich's benefits, it is useful to analyze the § 1133 requirement that claimants "[have] an opportunity to address the accuracy and reliability of that evidence" relied upon by the decision-maker. *Halpin*, 962 F.2d at 689. Regulations provide a useful guidepost as well; as noted earlier, the Seventh Circuit in *Semien* looked to the implementing regulations of § 1133(2) in evaluating a claim to reinstate

terminated benefits under § 1132(a)(1)(B). 436 F.3d at 809, 812. This approach is particularly logical given that compliance with § 1133 is to be undertaken "[i]n accordance with regulations of the Secretary." 29 U.S.C. § 1133. Under the regulations governing appeal of adverse determinations on review, in order for there to be a full and fair review, the "plan administrator shall provide such access to, and copies of, documents, records, and other information described in paragraph[] (j)(3) . . . as is appropriate."[10] 29 C.F.R. § 2560.503-1(i)(5). In turn, subsection (j)(3) requires that the notice of an adverse determination on review include a "statement that the claimant is entitled to receive, upon request and free of charge, reasonable

_____

[10]The court notes that the regulations require the Plan Administrator, not the Claim Administrator, to provide this access. However, the Summary Plan Document in this case indicates that in appealing a claim denial, a claimant should send the appeal to the Claim Administrator and in turn the claimant "will be given reasonable access to, and copies of, all documents, records, and other information relevant to the claim." (Aff. of Alan Olson Attach. 1, at 20) (Docket #19-1). Further, the Summary Plan Document states that if the decision on appeal is denied, the Claim Administrator will provide notice that "inform[s] you that, upon request and free of charge, you are entitled to reasonable access to and copies of all documents, records and other information relevant to your claim." (*Id.* at 21). Accordingly, the notice letter sent by Sedgwick after the first appeal specifically stated that "[y]ou will be provided, upon written request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claim for benefits." (LTD Admin. R. 0276). Correspondence from Walgreens corporate office also indicated that the Administrative Record would be forwarded by Sedgwick, the Claim Administrator. (LTD Admin. R. 0296). Additionally, Sedgwick, in noting that the plan document would be sent from Walgreens, asked that any further correspondence be directed to Regina Winfield, an Appeals Specialist with Sedgwick. (LTD Admin. R. 0295, 0276). Thus, it would be unreasonable to read the regulation as preventing the court from considering whether Sedgwick properly disclosed required documents in evaluating whether the review was full and fair. The Seventh Circuit has written approvingly of considering a Claim Administrator's failure to provide access to information. *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 798 (7th Cir. 2009) ("a participant who is denied access to internal guidelines that relate to her unsuccessful claim for benefits may be able to show that she was denied full and fair review of the denial by the claims administrator").

This issue is distinct from whether a Claim Administrator is liable under § 1132(c) for withholding records because the court is not determining whether to assess a penalty here, but rather whether the overall actions taken in terminating the benefits were arbitrary and capricious.

access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(j)(3). Information is "relevant" if it: (1) "[w]as relied upon in making the benefit determination"; (2) "[w]as submitted, considered, or generated in the course of making the benefit determination," regardless of reliance on the information; or (3) shows compliance with administrative processes and safeguards required under the regulations in making the determination. 29 C.F.R. § 2560.503-1(m)(8).[11] Thus, a failure to provide reasonable access to relevant documents "may result in a determination that [an administrator] did not accord the claimant a 'full and fair review,' and that its denial of the plaintiff's claim was therefore arbitrary and capricious." *Brucks v. Coca-Cola Co.*, 391 F. Supp. 2d 1193, 1212 n.18 (N.D. Ga. 2005) (cited approvingly by *Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 798 (7th Cir. 2009)).

However, in evaluating a benefits termination, substantial compliance with regulations may be sufficient. *See*, *e.g.*, *Halpin*, 962 F.2d at 693-94. Most cases applying the substantial compliance standard do so in the context of reviewing the sufficiency of notice provided. *Id.*; *see also, e.g.*, *Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 689 (7th Cir. 2004). However, the standard has been applied when reviewing other areas of ERISA compliance because "[t]he concept of substantial compliance is part of the body of federal common law that the

---

[11]Relevant documents include those relevant to termination and appeal because they refer to a "benefit determination," for which an "adverse benefit determination" is defined as including a termination of benefits. 29 C.F.R. § 2560.503-1(m)(4).

courts developed for issues on which ERISA does not speak directly." *Davis v. Combes*, 294 F.3d 931, 940-41 (7th Cir. 2002) (applying standard in reviewing compliance with "ERISA-regulated policy's change of beneficiary requirements"). The Seventh Circuit has described the substantial compliance inquiry as "fact-intensive." *Hackett*, 315 F.3d at 775. In *Halpin*, assessing the sufficiency of notice, the court wrote that "[i]n undertaking this inquiry, we must remember, however, the purpose of the regulations: to afford the beneficiary and the courts a sufficiently precise understanding of the ground for the denial to permit a realistic possibility of review, even under a deferential standard." 962 F.2d at 694.

As noted, *Halpin* and other cases involved compliance with notice regulations. Thus, the purpose of those regulations is not necessarily applicable to determining substantial compliance in the case at hand. Instead, the court must determine the purpose of the regulations guaranteeing access to relevant documents. Though there is sparse interpretation, one district court noted that:

> Meaningful participation in [the] internal review process therefore requires that the claimant have an opportunity to review the relevant documents in the claim file so that the claimant may submit any additional documents, correct any errors in the record, point to any favorable evidence that would tend to support the claim, fully understand the reasons for the decision that is being appealed, and to otherwise prepare an informed response to that decision.

*DeLeon v. Bristol-Myers Squibb Co. Long Term Disability Plan*, 203 F. Supp. 2d 1181, 1193 (D. Or. 2002), *overruled on other grounds by Sgro v. Danone Waters of N. Amer., Inc.*, 532 F.3d 940 (9th Cir. 2008); *cf. Halpin*, 962 F.2d at 689 (persistent

core requirements of full and fair review include "having an opportunity to address the accuracy and reliability of that evidence"). Further, the regulations at issue here were the product of revision from prior regulation that used only the term "pertinent," rather than "relevant," with no further definition. 65 Fed. Reg. 70,246, 70,252 (Nov. 21, 2000) (codified at 29 C.F.R. pt. 2560). In so revising, the U.S. Secretary of Labor noted that the change "would make clear that claimants *must* be provided access to *all of the information present in the claims record*," regardless of reliance on such information in making the determination. *Id.* (emphasis added). Elaborating, the Secretary noted that "[s]uch full disclosure . . . is necessary to enable claimants to understand the record on which the decision was made and to assess whether a further appeal would be justified." *Id.* In light of this material, it occurs to the court that the purpose of the relevant-document-access regulations are to allow the claimant an opportunity to build as complete a case on appeal as possible. This makes particular sense in light of the commonly deferential review given once a benefit determination enters the arena of the federal courts. It is further supported by the fact that the regulations define "relevant" information as not only that information relied upon in reaching the determination, but also all information considered, submitted, or even generated during the process.

The court might otherwise pause to question whether the doctrine of substantial compliance is applicable at all to the disclosure requirement given its purpose and the remarks of the Secretary of Labor. But even assuming it applies,

the information actually relied upon in making the decision is the most important to a claimant seeking to rebut an adverse decision. While the concern regarding access to information submitted, considered, or generated may be just as important, it is axiomatic that in order to disprove a conclusion, one must attack the premises. In a case such as this, the decision to terminate benefits is based upon a conclusion that Amich is not disabled, which is derived from a number of premises supposedly established by medical documents relied upon by reviewing physicians. Thus, a failure to provide those documents supporting Sedgwick's premises strikes at the most basic ability to rebut Sedgwick's conclusion. To excuse failure to disclose such information would make the entire provision superfluous.[12] Thus, regardless of whether substantial compliance applies, and regardless of its exact boundaries, the failure to disclose information actually relied upon in making the determination, and specifically requested, would not qualify as substantial compliance. As noted in the recitation of undisputed facts, the documents requested by Amich, never provided until after Sedgwick issued its decision, were relied upon in the independent physician opinions in turn relied upon by Sedgwick. (LTD Admin. R. 0255, 0260, 0270, 0272). Moreover, Amich specifically and repeatedly identified the missing documents. He did not make a blanket request and then complain post-hoc of a missing document. Thus, Sedgwick could not have substantially complied with the requirement to provide access to relevant documents.

---

[12]This is particularly evident given the lack of ability to assess statutory withholding penalties, as discussed in the next section.

In view of the totality of the record, including a lack of substantial compliance, Sedgwick failed to provide a full and fair review, and defendants' termination was arbitrary and capricious. Sedgwick failed to provide all required documents in the claim file, and did not substantially comply when it omitted documents actually relied upon by reviewing physicians. Amich repeatedly requested the documents, and also requested sufficient time after receipt to review and then submit further information. Sedgwick, in turn, granted numerous tolling extensions, yet repeatedly failed to provide the documents required by regulation. Further, Sedgwick granted these extensions in the face of Amich's assertion that he would submit documents after reviewing the full record. A plan may only grant tolling extensions where it awaits documents it requested from the claimant. 29 C.F.R. § 2560.503-1(i)(4). This is only permitted where the information is "necessary to decide a claim." *Id.* Thus, Sedgwick may not apply tolling extensions to assert compliance with ERISA deadlines, subsequently cut off tolling before Amich submitted information, and then claim Amich failed to make a submission within the benefit determination time line. In order for the tolling to be legally effective, Sedgwick must have believed Amich's proposed submissions to be "necessary."[13] Therefore, it was arbitrary and capricious for Sedgwick to cut off tolling and make a decision prior to Amich's submission of documents.

_____

[13]Sedgwick seems to admit this position in any event, as its briefing defends its deadline compliance by citing to the necessary-information tolling regulation. (Defs.' Resp. Br. in Opp'n 16) (Docket #25).

Though defendants so argue at various places in their briefing, Amich's ability to submit documentation prior to Sedgwick's decision is irrelevant. In order to receive a full and fair review, Amich was entitled to see *all* documents actually relied upon by Sedgwick in deciding the first-level appeal. Without them, Amich could not have a fair opportunity to understand the entire record and, therefore, no fair opportunity to build as complete a case as possible before proceeding to the more deferential review granted in federal court.[14] This is not a case wherein defendants might be forgiven for cutting off tolling after the claimant repeatedly failed to submit requested information. Amich's correspondence made clear that he would submit documents after receiving and reviewing the *full* record, including specifically identified documents relied on by Sedgwick. Sedgwick granted tolling extensions in response to such requests and it would be unreasonable to infer that Sedgwick had no clue this was why Amich had not yet submitted information.

Alternatively, if Sedgwick was justified in making the decision prior to Amich's submission, then those documents must not have been necessary and, therefore, its repeated tolling of the deadline was improper under ERISA. While the court refrains from making a direct finding, this suggestion bolsters the conclusion that Sedgwick acted arbitrarily. In totality, the court finds that Sedgwick acted arbitrarily in issuing its decision prior to providing Amich with the full record and prior to his

---

[14]To rule otherwise would be to sanction withholding. Saddling a claimant with the responsibility to submit information prematurely in order to preserve a claim on review simply shifts the plan's burden of providing a full and fair review to the claimant, creating a claimant's duty to preserve that right to a full and fair review. That cannot be the intent of ERISA.

submission of documents, thereby failing to provide a full and fair review. Therefore, the court finds the defendants' decision to terminate benefits arbitrary and capricious.

Defendants raise an argument that, regardless of the propriety of Sedgwick's adverse determination, the documents that Amich ultimately submitted would not establish disability in any event. First, such assertion is post-hoc, offered by counsel for Sedgwick and not by the medical professionals that actually formed the basis for the appeal determination. In light of the deference otherwise due to Sedgwick's determination, it would be inappropriate for the court to review Amich's submissions *de novo* where, had Sedgwick otherwise considered them, the court would not be at liberty to do so. Second, the question presented is not necessarily whether Amich is entitled to benefits, but whether Sedgwick's termination was arbitrary and capricious. The court has determined it was. Thus, Amich is entitled to judgment.

### B.    Remedy

The final question raised concerns the proper remedy, and the court finds that a remand to the plan is appropriate. Under Seventh Circuit case law, either a remand to the administrator or a retroactive reinstatement of benefits may be appropriate. *See Hackett*, 315 F.3d at 775. Such a determination is generally within the discretion of the district court. *See Halpin*, 962 F.3d at 697. One important distinction concerns whether the case involves an administrator's initial denial of benefits, or instead a termination of benefits that the claimant had previously been

found entitled to. *Id.* "The distinction focuses on what is required in each case to fully remedy the defective procedures given the *status quo* prior to the denial or termination." *Id.* at 776. Generally, where the plan administrator did not afford adequate procedure in denying an initial claim for benefits, restoration of the status quo is achieved through remand and providing proper procedure. *Id.* Where defective procedure results in an improper termination of benefits, a reinstatement remedy restores the status quo because "benefits would have continued unaltered but for the plan administrator's arbitrary and capricious conduct." *Id.*

However, there is more nuance to this dichotomy than is immediately apparent. Though this is a case where the claimant was already determined to be eligible and benefits were later terminated, it does not fall neatly into *Hackett*'s improper termination category. The *Hackett* court drew its reinstatement rule from *Halpin*. *Hackett*, 315 F.3d at 775-76. But delving further into *Halpin*, the Seventh Circuit has also noted that "remand was not necessary in [*Halpin*] because the administrator had previously determined that the claimant was eligible for benefits, and because the claimant did not have additional evidence to present on the merits of the claim." *Schleibaum v. Kmart Corp.*, 153 F.3d 496, 503 (7th Cir. 1998). Instead, "when additional evidence on the merits is presented for the first time to the district court, the court should remand to the fiduciary to make an initial assessment of whether the additional facts establish eligibility." *Id.* This is supported by cases that show a tendency to prefer remand rather than reinstatement where the record

is unclear concerning actual eligibility for benefits. *See Love v. Nat'l City Corp. Welfare Benefits Plan*, 574 F.3d 392, 398 (7th Cir. 2009) (finding arbitrary termination, reinstatement only proper where "evidence is so clear cut that it would be unreasonable" to deny benefits); *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 835 (7th Cir. 2009) (ordering remand where, on record before court, it could not "say definitively that it was unreasonable for the Plan to terminate" benefits); *Quinn v. Blue Cross & Blue Shield Ass'n*, 161 F.3d 472, 477-78 (7th Cir. 1998) (ordering remand as appropriate where not "clear-cut that it was unreasonable" to deny benefits). In fact, the Western District of Wisconsin came to a similar conclusion:

> Because this case involves a termination of benefits rather than a denial of an application, one reading of *Hackett* suggest[s] that reinstatement rather than remand is the appropriate remedy. However, the reasoning in *Hackett* does not necessarily apply to this case. I cannot say that, had defendant provided plaintiff with sufficient process, it would have come to a different conclusion. The problem with defendant's decision was not that it was unequivocally wrong but rather that it was uninformed.

*Mennenoh v. Unum Life Ins. Co. of Am.*, 302 F. Supp. 2d 982, 990 (W.D. Wis. 2003).

In the case at hand, unlike *Hackett*, this court has not found that the initial termination, or even the first-level appeal, was executed in an arbitrary and capricious manner. Instead, it is Sedgwick's conduct in the second-level appeal that forms the basis for the court's decision. Thus, because the court cannot say at this juncture that initial termination or conduct during the first appeal were arbitrary and

capricious, it cannot say that "but for" Sedgwick's arbitrary and capricious conduct in the second-level appeal, Amich's benefits would continue. But for Sedgwick's arbitrary and capricious conduct, at most Amich would have had his submissions considered, but there is no guarantee Sedgwick would have overturned its decision. Instead, this is a situation where Amich has additional evidence that was not considered during the second-level appeal and, therefore, the most appropriate remedy is a remand.

Should Sedgwick reverse its decision, Amich's benefits must be reinstated retroactively. However, any such reinstated benefits may be reevaluated as of the date Amich would have entered the "any gainful occupation" definition of disability that takes effect after eighteen months of benefits. *See Pakovich v. Broadspire Servs., Inc.*, 535 F.3d 601, 605-07 (7th Cir. 2008) ("when the plan administrator has not issued a decision on a claim for benefits that is now before the courts, the matter must be sent back . . . to address the issue in the first instance"). As such, the court will remand this case to Sedgwick for a redetermination of eligibility for benefits under the "own occupation" standard, subsequent to Amich's opportunity to submit further information. If the Plan so chooses, it may also conduct a review for eligibility as of November 30, 2009, under the "any occupation" standard.[15]

---

[15]The court leaves this to defendants' discretion in that it would not appear to be outside the Plan's power to allow benefits to continue past the date on which eligibility becomes more restrictive. Thus, should Sedgwick determine to reinstate the benefits, the Plan need not necessarily instigate review under the "any occupation" standard.

## III.    WITHHOLDING OF DOCUMENTS

As to Amich's second claim, defendants are entitled to judgment as a matter of law and Amich is not.   Under ERISA, a penalty may be imposed on "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested . . . within 30 days after such request." 29 U.S.C. § 1132(c)(1)(B).   However, penalties under § 1132(c) may not be imposed for violation of agency regulations.  *Wilczynski v. Lumbermens Mut. Cas. Co.*, 93 F.3d 397, 406-07 (7th Cir. 1996).  In *Wilczynski*, the plaintiff asserted a claim for penalties because the defendant plan had failed to provide materials pertinent to her appeal.   *Id.* at 405.   The case occurred prior to revision of the applicable regulations from "pertinent" to "relevant" documents, but the Seventh Circuit laid out two alternate and fatal grounds, one of which remains undisturbed by the revised regulations.  *Id.* at 405-07.  The second, undisturbed ground held that § 1132(c) only authorizes penalties for failure to provide information as required under that "subchapter."  93 F.3d at 406-07.  The court found persuasive a case wherein the Third Circuit noted that an agency is only authorized to decided what conduct will be penalized if Congress has expressly granted that power.  *Id.* at 406 (citing *Groves v. Modified Ret. Plan for Hourly Paid Emps. of Johns Manville Corp. & Subsidiaries*, 803 F.2d 109, 117 (3d Cir. 1986)).  Because § 1133 only set forth disclosure obligations for the "plan," it could not authorize the Secretary to impose sanctionable

obligations on the plan administrator.  *Id.* at 406-07.  As of today, Congress has not changed the statute, and thus § 1132(c) penalties may not be assessed for administrator violation of § 1133's implementing regulations.  29 U.S.C. § 1133; *see Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1092 (N.D. Ill. 2005); *Lewis v. Aetna Ins. Agency, Inc.*, 2010 WL 4386484, at *9 (S.D. Ill. Oct. 29, 2010).  Thus, under the current state of Seventh Circuit law, Amich's claim is not enforceable against Sedgwick.  Further, the claim is not enforceable against the Plan as Section 1132(c) only provides for penalties against administrators.  Therefore, defendants are entitled to judgment as a matter of law.

## IV.  ATTORNEY FEES

Finally, Amich raises, by way of two sentences, the issue of an award of attorney fees.  Defendants briefly responded, and Amich did not discuss the issue again.  Because any potential award is left to the discretion of the court, 29 U.S.C. § 1132(g)(1), it will wait for a proper motion requesting an award and the subsequent full briefing.

Accordingly,

**IT IS ORDERED** that the plaintiff's Motion for Summary Judgment (Docket #17) be and the same is hereby **GRANTED in part** and **DENIED in part**.  This action is **REMANDED** to the claim administrator for a redetermination of the plaintiff's eligibility for benefits subsequent to his opportunity to submit additional information; and

**IT IS FURTHER ORDERED** that the defendants' Motion for Summary Judgment (Docket #33) be and the same is hereby **GRANTED in part** and **DENIED in part**. The plaintiff's second claim for relief, under 29 U.S.C. § 1132(c)(1)(B) be and the same is hereby **DISMISSED with prejudice**.

The clerk of court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge